All right, we'll call the next case, DeLeon v. Abbott. DeLeon v. Greg Abbott May it please the Court, in refusing to reduce any of the over 1,700 hours that the Plaintiffs' District Court abused its discretion in a number of ways. I'll begin with three categories of fees that stand out as particularly problematic. Fees for clerical tasks, fees for supporting amici, fees for unproductive travel time, and then I'll address the others as time allows. Turning to the first category, clerical tasks, it was an abuse of discretion for the District Court to award fees for clerical tasks. In Allen v. U.S. Steele, this Court clearly held that clerical work is not recoverable under Section 1988. That was a Title VII case, but it made it clear as a general matter that clerical tasks were not recoverable. Do you seek us to say that certain types of things weren't recoverable and then remand for the District Court to have to figure out what would be deducted, or do you have an amount today that you think was clerical task that you want us to subtract and render? I'm Mr. Delroy, I think there are a few options. I think the Court is prepared with the record before it to make the modifications here, so we would recommend that the Court go ahead and modify the fee award rather than remanding. And we have the power to do either one? Yes, Your Honor. Have you itemized exactly what the outcome should be? Yes, they're reflected in the briefing, but I'm happy to sort of also share that. With respect to the clerical fees, we've identified a little over 114 hours of clerical time. In the Davis v. Perry case, which is also handled by the judge below, the judge in that case held that fees should not be awarded for clerical work. Nevertheless, despite the Davis case holding, that was in 2014, it made no reductions in this case for clerical work, and it didn't even acknowledge the State's objections with respect to clerical work. That was an abuse of discretion. 114 hours at how much? I mean, what's the number? The final number for clerical work is, it depends on if the Court modifies the rates. I don't know that yet. We've done the sort of overall bottom line calculation for the Court, which would be about $365,000 bottom line if the Court were to modify the order by taking out all the non-compensable hours spent and also adding a 20% deduction for all the block, build, and vague time, and leaving the hourly rate the same as the District Court set. If, as we argue, the Court also lowered the hourly rate to reflect the State bar rates for the San Antonio legal market, that number would be about $211,000 total. So clerical task, 114 hours that you believe should not have been billed? That's right, Judge O'Rourke. How much, what's the figure for that? The figure for clerical is about $32,000 total. What's your next one? The next one is fees supporting amici in this case. In Morales v. Terman, this Court held that amici are not entitled to fees under Section 1988. That's different than fees to help. Are you allowed to help amici on your side, or are they supposed to be independent? They're supposed to be, I don't think there's anything wrong, per se, with helping or assisting amici, but under Section 1988, which is clear that only parties can collect fees, assisting amici should not be compensated. Don't they have to put in their brief that they did it on their own or something, and that they're not working with, I thought in the amici brief there's some little statement that they make, that they're independent, and that they're their own views and not anybody else's views. I don't have enough of a memory to make a clear statement about that. I'll ask the other side. Yes. But the point is, in this case, as the Eleventh Circuit held in the Bishop case in the Oklahoma District, also a same-sex marriage case, those courts reasoned that time spent assisting amici should not be recovered because it's effectively a way to evade the prohibition of amici collections, because you're essentially doing work for the amici by a party's counsel. How much is that? That is . . . Another $32,000 or some . . . $31,000? We have that at $39,000. Okay. It depends on the attorneys that are working on the cases. Doesn't it make sense that a leading counsel is doing a good service for his client if he coordinates the amici work? In other words, you don't . . . amici filing . . . briefing the same issues. A lead counsel can't be . . . can't charge for that? Not in Section 1988 litigation, Your Honor, because what counsel is doing is effectively amici work, and amici are not parties. This is what the Eleventh Circuit reasoned, and the Bishop case also adopted this reasoning, and I think it makes sense because . . . Well, I can see if you were doing their work for them, whatever point they want to brief, if you do that work for them, but just to coordinate the work and try to get as many different viewpoints from different amici, that seems like helpful work to the client. I mean, I don't understand why they couldn't bill for that. Well, I think the reasoning is that that coordination process really should be done by amici, and to the other side shouldn't have to pay for it, because those amici are not parties, and you have to draw a line somewhere. This is over a hundred hours of coordination? Yes, Your Honor. Now, to be clear, a lot of . . . almost all these hours are block billed, so it's impossible to tell how much time was actually devoted to these things. The District Court never went through and delineated and determined which . . . how much was spent on . . . And how would you be saying one opportunity for us is to just reverse and render, if the block billing makes it impossible unless someone segregates? Because the block billing prevents the . . . essentially prevents the court from determining how much . . . Wouldn't that prevent us also? Wouldn't it have to be a remand? No, it means that the plaintiff didn't meet its burden. That's the argument? Yes. If you do not provide adequate evidence of your billing, you don't get to collect for that. So, if you add that up, that's 114 hours. At the very least, this also highlights the problem with the District Court's approach here, which is it did not go through and address the state-specific objections to the block billed hours. And this is in stark contrast, again, to the Davis v. Perry case, where the court went through and addressed specific objections. This Court has been clear that . . . Weren't those objections timely and everything? Was there some reason given why the District Court . . . As you point out, the District Court knew how to do that because it did it in another case. Why didn't the District Court do that? We don't know, Judge Elrod. I mean, the Court devoted one and a half pages to its rate assessment and two pages to its hourly . . . Did you request that in like a follow-up and say, District Court, please give us some detail, address our objections? We did not file a motion for reconsideration from here, and we came here. But . . . When you say devoted one and a half pages to the reasonable rate, the Court actually did reduce the reasonable rate. In other words, it received competing evidence, and then it made its determination, which was a, what, 20 percent reduction? It was about 19 percent. Okay. So, about 20 percent. So, wouldn't you have to be saying it's clearly erroneous for the District Court not to have cut even more, even though the District Court was facing competing evidence, supporting their view, which cut yours? Is that . . . Do you have a case that suggests that it's clearly erroneous for the District Court not to cut even more than it did on reasonable rates? We have strong evidence that the Court's determination of rates, however it reached that rate, we don't know any of its reasoning for its calculation. But those rates that it reflected, even though it did cut by 20 . . . about 19 percent, still 50 percent higher than the best evidence of what the market . . . the prevailing market rates are in San Antonio. The Court seemed to think . . . What case acknowledging the Supreme Court's blunt decision says that that's still clear error on review by us? What's your best case where a circuit court reverses a reduction based on clear error, even though you had competing evidence submitted? Oh, I don't have a specific case for that, Judge Higginson. The point is that the District Court did not address our objections to their evidence. It provided better evidence, and the District Court did not explain how it reached its calculation. It just pulled a number out of the air, the best we can tell. We can't actually judge what the District Court did if they didn't explain it, is what you're saying. Well, I think . . . we don't know, and we don't know why. Is that reversible? I mean, I'm not sure you would have seen it. It's an unpublished decision that this panel just issued that said there doesn't need to be much explanation at all. So is your argument here that it's reversible for not having given an explanation for the rates portion of the Lodestar? That would be reversible for a remand for the Court to try again, but I think the Court has a record here. It can make that assessment itself. Well, okay, but that one was reduce the rate. Your case doesn't depend on winning the rate argument, does it? No, we have an argument for the rates, but the primary error here is the Court's refusal to reduce a single hour from the over 1,700 hours that were billed. So even if that was totally correct, you still have other claims? Yes, even if . . . thank you. Even if the rates were properly reduced, the Court should still modify the award significantly to address the other problems, which I said, clerical, also with the problems with the amici. The next category is travel. The District Court abuses discretion when it refused to reduce fees for nonproductive travel time, and it didn't even acknowledge the State's objection with respect to these hours. This Court has consistently approved a 50 percent reduction in travel time for nonproductive travel. Have we said that's the absolute most that a Court can award? No, Judge Davis, the Court has not, you know, established a hard and fast number. It's just consistently affirmed a 50 percent reduction. Have we ever reversed? In other words, it's not just affirming a District Court. Have we ever said a District Court must reduce? I haven't found a case there. All the cases I've found are review of District Court decisions that have reduced it by 50 percent. And yet that would be consistent with the very high deference we give to District Courts. But I'm curious about your request to us is to reverse the District Court. That would be a bright line rule that you must reverse. I think the Court can do its own analysis here and determine that the plaintiffs in this case did not establish that billing full freight for nonproductive travel time was established practice in the San Antonio market or that they actually were engaged in legal work during their travel time. Both of those things they have to show to establish the right to recovery, and they haven't done that here. And the District Court didn't even address those issues. The next category is intervention. It's an abuse of discretion for a District Court to address a third party's intervention, and that's exactly what happened here. This Court held in the Hopwood case that it would be, quote, inequitable to force taxes to pay for fees and costs associated with failed intervention. The plaintiffs in this case have never disputed the State's objection to time billed addressing this third party's intervention that the State also opposed. And yet the District Court awarded the full fees, didn't address the State's objection. How much is that? That's 13.8 hours, Your Honor, and that would be $5,100. Similarly, with respect to the media-related work, the District Court abused its discretion when it refused to reduce any of the plaintiff's counsel's hours working or reviewing media. Do we have a case about, that says media work is law work anyway? I mean, do we have a case one way or the other, or is any jurisdiction considered that? I haven't found a case from the Fifth Circuit that has addressed that specifically. The Court has consistently affirmed reductions for media-related work. And regardless, in this case, the plaintiffs conceded that media-related work is not recoverable. Nevertheless, the District Court... So they said it's not recoverable, but the District Court gave it to them anyway. Yes, 11.8 hours, yes. And the reasoning for that, according to the District Court, was that the block billed entries for those times also included legal work. But that doesn't address the recovery for media time. The next category, quickly, is expenses. The District Court further abused its discretion when it awarded all of the plaintiff's requests at cost, with no deductions, despite the State's objections to non-compensable and extravagant expenses. The most glaring one is the Pro Hoc Mutea expenses, which the same judge in another case held is not recoverable because it's the cost for an attorney... For Times Running Out, what's the record site? Because I was trying to track down, like, the W Hotel and others that were said to be extravagant. Some of your record sites there referred to your own submissions. So what's your record site for that one you mentioned, the most extravagant? The Pro Hoc? Yes. Your Honor, can I give that to you on rebuttal? I'm sorry. That's fine. Okay. Thank you very much. You have some time left. And Mr. Tice. May it please the Court. Can we just start there at the expenses? Sure. How many people are staying at the W and why? I mean, surely you could do something as a learning expense for your firm or whatever, and it doesn't mean that that's a recoverable. I understand, Your Honor, but I think some context is in order first with regard to the in general. The plaintiffs, the district court had a record before it in which the plaintiffs exercised significant billing judgment writing off over 700 hours of time, which was one-third of the total time requested, that would have been compensable and would have been charged to a paying client. Okay. So this is not a case where the district court came and simply awarded us everything we asked  Okay, but I'm talking about the expenses. Sure. I mean, if we don't mind talking about that, and that's a much slower, we're talking about $20,000 versus $5,000, so you probably would rather talk about the expenses. I was going to ask, $744 at the Tableau restaurant, why is that appropriate and why are drinks after work appropriate as legitimate billing expenses? Well, Your Honor, let me pull up the record sites for the celebratory drinks. I think it's relevant. It's on page 2894 of the record, and what the record reflects is a receipt for lunch immediately after the preliminary injunction hearing, and that lunch was for the attorneys who attended the preliminary injunction hearing, including two different attorneys who argued and two others who were in support, as well as the clients, and it was for $370. Six total, therefore? That's a little hard to tell. I believe it was eight. It's not clear from the record, but what I was informed was it was eight people. So it was lunch for eight people immediately following the preliminary injunction hearing. There was no district court finding that these were celebratory drinks. There's nothing in the record suggesting that they were celebratory drinks. The restaurant, again, it's on the record, but it is a restaurant, not a bar, and so the idea that celebratory drinks and extravagant expenses is simply Texas's characterization of these fees. The district court had the same argument in front of it. It was met with the same characterizations of extravagant fees and unrecoverable costs. It looked at it and found this to be reasonable. So are you saying that there were not after-work drinks billed at record of an appeal 3330? Are you saying that's not true? What I'm telling you, I was not there, Your Honor. What I'm telling you what the record reflects is that there were meal beverage expenses after preliminary injunction hearing at a restaurant for $365.66. The district court did not make a finding that these were extravagant or drinks or anything like that. The receipt on the record that I just indicated to you, 2894, suggests that the ticket was at 1249 p.m. Do you know what 3303, the record, is? Is that to the receipts or is that to a response? 3330 is the state's response. So, okay. That's their response. That's their objection to the expenses we submitted. I think more broadly, Your Honor, we submitted all these things to the district court. The district court said it looked at them. It said it carefully reviewed them. These are primarily travel. So, $15,000 of the $20,000 in total costs recovered were expert fees, which the state does not protest, and travel fees. The main part is one for you is the media. If you conceded it's improper, is there a case that says because he accepted your significant one-third discount in hours that then the district court isn't obligated to parse out even minimal numbers of hours that you're acknowledging? Do you see my question? I do. Is there any case law that says this sort of balancing allows for us to say no clear error? There is, Your Honor. I'm forgetting the name of it now. I think Associated Builders is one of them that says essentially. Louisiana Power is another one that says although we, you know, the one side is objective to a number of the hours, overall, knowing that the district court is the eyewitness to the case and the one best suited to determine what is and what is not reasonably expended. Even where you conceded? So what happened? So again, let me give you a little bit of context on the media point because I think it's really important. So what happened was we, in the exercise of our billing judgment, wrote off approximately 700 hours, okay? Ended up submitting attorney's fee requests for 1,700 hours. So 700 hours of those were gone. That included virtually all of the media time. It included all of the time billed by 15 of the 25 attorneys who billed, or timekeepers who billed any time to this case. It included a 25% rejection in all of the time that the arguing attorney, the attorney who argued before this court, billed in the four days leading up to and including the oral argument in the marriage equality oral argument in January 2014 because some of that time included media time. Now what's happened is that on appeal, or in the district court and on appeal, they went back and found 12 hours approximately of the 1,700 total hours billed. Those 12 hours include, the largest portion of that is a nine-hour chunk of time billed by the attorney who argued the preliminary injunction motion on the day he argued the preliminary injunction motion. And it says, prepare for and argue preliminary injunction, media interviews, review case, review another thing. It's in the brief. You can find the record citation if you'd like. So what the state says is toss out that entire nine hours and toss out the 12 hours. Well, they made this argument to the district court. The district court specifically looked at this argument and said, in light of the fact that they've already written off virtually all media time, the fact that they've reduced their time 25% on the four days up to and including the oral argument because it might include some media time, and just in general, the fact that they've exercised billing judgment, I'm not going to essentially toss the baby out with the bathwater and say that, you know, this de minimis time, again, 12 hours out of 1,700 requested is some, is a problem. Well, it seems a little bit of a slippery slope too, right? And I may be wrong, and correct me immediately if you've got command of the record, but a $200 chauffeur ride, is that in there to the airport somewhere? There were attorney chauffeur rides back and forth to the airport. There's also a lot of taxis and Ubers and things like that. But if I can go through here and find ones that look really extravagant to bill the Texas taxpayer for, it's the two cases you cited before that say, well, those are so miniscule since he already affirmed the reduction of a third. Those are sort of not clear error. We don't re-amend them back for even more hyper-parsing. I think as a matter of comments. That's what you're urging? That is right. I think both. But they didn't reduce the expenses. That's apples and oranges, isn't it? His question did an expense question, and you said they've already reduced the fees. Well, Your Honor, I think if you turn to page 19 of Texas's reply brief, the heading for their cost section is, the district court failed to properly weigh the evidence regarding costs. Now, weighing the evidence is a task for district courts, not this court. The district court was met with these exact arguments as to extravagance, and what the district court found was, looking at the record as a whole, we don't find that these are reasonable. Something is extravagant on its face, having more lawyers than two at a hearing. You know, eating at the $700-something restaurant. Having multiple people staying at the W. My question did include both fees and costs. When I was just, that question did. Well, with regard to the W, there's also lots of other, again, Texas has cherry-picked the record. It's found the most extreme examples. There's plenty of other citations to other stays at the W that are $249 a night, $279 a night. That's a record $29.10. $29.11. Isn't the overarching question, again, is there any circuit law anywhere in the country that reverses because there are specific identified circuit-determined extravagances? Do you know of a case that finds... I certainly do not, and on the contrary, this court has repeatedly held that it does not second-guess. It does not go back through line by line and try to... Wouldn't we have to if we adopted... May I ask the question? Wouldn't we have to if we adopted the 11th Circuit rule as to at least the amicus brief? Well, the amicus brief issue is an interesting one for a few reasons. First of all, the majority of the time that the state says is not compensable for amicus briefs, they said it was 113 hours, what we said in our opposition brief was that a majority of that time was, in fact, fully compensable because it was time spent reviewing and responding to the 26 amicus briefs that were filed on Texas's behalf. The state, on page 39 of their appellate brief, concedes that that sort of time is generally compensable if it's reasonable. So that's just a factual matter. A majority of the time was compensable. But turning to your specific question, as a practical matter, coordinating with the MICI is an integral part of appellate strategy. As several of the cases we cite that reject the 11th Circuit's rule state that it is a... It's something that clients pay for and it certainly makes sense to not establish some categorical rule where no matter what the circumstances, no matter how important the case is to the Texans or to the country, that, you know, that attorneys have to either go hands off or not be able to recover that time that is ordinarily recoverable from a paying client. With regard to the 11th Circuit case in particular, it's a very unusual case, Your Honor. If you take a look at it, it's called Glassroth. It involved Chief Justice Roy Moore of the Alabama Supreme Court. It was a case involving the monument. It got some notoriety a few years ago. And the court noted repeatedly the unusual circumstances of that case, in particular the fact that he had not filed any objection to the fee and cost expenses in that case. So, you know, it speaks in categorical language, admittedly, but I do think that it's limitable to its facts in the 11th Circuit and certainly in this circuit. And it would not make sense. I do not think it's a majority position. Even their own Bishop case that they cite concedes that it's not the majority position. We don't have a position yet. Right. The Fifth Circuit is not... Well, that's true, but I would say that the Fifth Circuit has generally committed these sorts of determinations to district court discretion. Well, actually, you were saying that we don't reverse. We do reverse for costs sometimes. We start looking at those copies of records and expert reports and things. There are a number of cases where we've reversed district courts on costs, actual court costs. Are you referring to the cases that are cited in the Texas Supreme... I'm not referring to any particular cases. I'm referring to cases that I'm aware of. Well, Texas cites a number of cases in their opening brief suggesting that you have to show that the costs were necessarily incurred. We pointed out in our opposition brief that that's not the rule for Section 1988. Section 1988 allows any recovery of any fees that would reasonably be incurred, including reasonable costs that could be charged to a client. They don't make any response to that in their reply brief. What do you say about the block billing? I'd say a couple things about block billing, Your Honor. I think the first point is that this circuit, as far as we know, has never reversed a district court for having block billed. I mean, how can we review a block bill? I mean, how is that reviewable? I think it's up to the district court, Your Honor. Well, I mean, it's supposed to be in a form that we can review. That's right. And I think that if you take a look at the categories of time here, it is absolutely reviewable time. I mean, these are very detailed entries. They include more than one entry, but they're very detailed. In this case, this Court in Halliwell specifically rejected a challenge, an abusive discretion challenge, to a block billing entry, finding that the records, the district court found that the records were adequately reviewable, and that it was not a clear error, certainly, to reverse it. It's up to the district court. Sometimes district courts reduce time based on block billing. Here, the district court recognized that the plaintiffs had exercised significant billing judgment in writing off hundreds and hundreds of hours of time, and therefore found that the remaining entries, after careful review, were appropriate. And I think it's also important to keep in mind that what the district court had before it, its opposition from Texas was to 98 percent of plaintiffs' time entries. We submitted 1,700 hours. Texas objected to all but 40 of those hours. Okay? So the district court did the best job it could, considering that every single job, or every single entry was objected to. And if you look at its order, it does a very nice job, through 10 pages, with detailed responses, discussing each of the categories that they refer to, and then at the end, suggesting that the remaining arguments are without merit. Again, this is what the Supreme Court requires in Hensley and Perdue, is a concise but clear statement of the district court's review of the record. And that's exactly what the district court did here. I don't think this court has ever held, and I don't think it would be wise for this court to hold, that a district court need go through every single entry, no matter how complicated the case and no matter how long, and say yes or no as to each and every entry. If the district court is inclined to do that, it may, but this is what discretion means. The district court is given the opportunity to make that determination in the first instance. Right, but it's not unfettered, we have to be able to review it. Of course not, Your Honor. Absolutely. And I'm not suggesting otherwise. About the 13.8 hours for intervener Chris Servier, which you don't address in your response. Right. And I apologize for not addressing that, Your Honor. We don't concede that that time is not compensable. The case that they rely on for the intervention time is Hopwood. It's a 2000 case from this court. What that case held is that it expressly declined to create a categorical rule. What it said was we need not, I can't remember the exact term, but we need not create a categorical rule on this, essentially, to find that the district court did not abuse its discretion in refusing to award the intervention time in that case. So, again, that's consistent. I mean, we've said we probably don't have it, but we're not going to make a categorical rule, and the Seventh Circuit's made a categorical rule, and you didn't even address it in your brief, so why shouldn't we reduce the 13.8 hours? Your Honor, again, it was an oversight that Texas has objected to, essentially, every hour we've submitted, so to the extent we neglected to respond to that, I apologize. But legally, why should you be entitled to that? Well, legally, for several reasons. First of all, this was, so, again, they've objected to 13.8 hours out of approximately 1,700. Okay? Of those 13.8 hours, the, if you look at the entries, they are 723, Jessica Voisel, review motion for reconsideration re-intervention, review Liberty Council amicus brief, research re-authority cited in the same, draft e-mail to B. Doran and M. Bonato, re-amicus briefs. So, in that individual entry, it's only a small component of the total time. Okay? And then finally, given that there's no categorical rule, it would not make sense for this Court to say that no matter the circumstance, I mean, essentially, the probably five or six hours of the 13.8 that were actually dedicated to dealing with this amicus, who tried to intervene, we did not file an opposition, we did not oppose it, we did not have a hearing on it, all we did was spend a little time trying to figure out under the rules whether we had to do so. I think it would be strange to create a categorical rule that said, you know, even though you, of course, would charge that to a paying client because it's part of the case, you can't just ignore those sorts of things, so it would be very strange. You know, it would be a different situation if we had spent 150 hours litigating his intervention, you know, and then that wouldn't really be fair for the State, but we didn't do that. And so the Hopwood says, the Hopwood case says, we're not going to create a categorical rule, but it would be unfair under these circumstances to charge the litigation time, and in that case, there were a significant number of hours actually billed to the intervention. Here was a very small amount. I have two more questions. Sure. One has to do with the fact that so little work was actually done. I know that we've got these people reviewing things, and actually, I think a paying client may not pay for people just as the third or fourth associate to review such and such. They don't always pay for that. They nickel and dime on that, too. But assuming that so much little work was actually done because the case just sat while we were waiting, how is it proportionately fair? So that's the overall question to get over $500,000 when the main case is only $1.3 million and the other cases that have more action got more, but those are main cases that actually required a lot of work, litigation. And then the second question has to do with the amount of hours that were spent on the briefing. On our CJA panels that are dealing with criminal liberties, they can only spend 32 or 33 hours without having to get special permission or maybe not be eligible. And we're talking hundreds of hours that were billed for briefing compared to the CJA appeals that can only be 32 hours or 33 hours. How is that appropriate? Sure. I'll take your questions in order. And if I might, can I quarrel with your premise of your first question that nothing much happened in this case? You bet. Okay, great. So, first of all, I think a lot happened in this case. At the time this case was filed, no district court following Windsor had declared any marriage law unconstitutional. When we filed, there was no roadmap. We filed about four months after the Windsor decision. We had to do all the research, find experts, work with those experts, develop the arguments. We filed a 50-page brief. The state filed a similarly sized brief, 800 pages of exhibits, expert reports, all these things. Okay, then Texas fought this tooth and nail. This was a very aggressive defense of this case. They tried to consolidate the case. They tried to transfer venue. They opposed the preliminary injunction. They appealed the preliminary injunction. They fought us in the Court of Appeals. We tried to lift the stay twice. They refused both times. So, to suggest that this was some sort of I would quarrel with. Okay, but turning to your question, whether it was, I believe you said, is it fair given that, I think the short answer is, and I've said this before, obviously, but the district court was the one closest to the case. It took a look at this. It found that those hours were reasonably expended and that the total number of hours was reasonable. This court consistently defers to those sorts of determinations. Beyond that, it's confirmed, I think, by other marriage equality cases. We cite many cases in our briefs. I think probably the best example for you to take a look at is the Lotta case from Idaho. And what that case found was so they cited that case in their opening brief. We responded to it and they don't reply in their reply brief. I'll note, but what we said was that they requested a certain number of hours. It was reduced to, I think, 1,729, which is very similar to the amount of hours awarded here. The Idaho attorneys in that case were paid $400 per hour, the senior attorneys, just like they were here. I don't know if Idaho is comparable to Western District of Texas, but, again, I think it's indicative. And then finally, the total award in that case was $600 something thousand dollars, $620,000, I believe, which, again, is very comparable and indeed more than here. And that was a very similar posture. It's not exact in every respect, but there was a similar amount of briefing below and in the district court. So I think that this is well in line with those other cases. There's also many, many cases they cite that did not go to the Supreme Court or that involved very truncated... I'm sorry, I ran out of time. Do you mind if I finish? Oh, sorry. I was interested in Judge Elrod's question. The briefing. When you were on appeal here, were there circumstances that made it very controverted? Had a split emerged? Cases pending in the Supreme Court? Were you defending against three appeals? Were those consolidated? Or could you just give us the outline of what the briefing posture was in the Fifth Circuit? Sure. There were three consolidated appeals in that case. Our case was argued separately. It was a special three-hour session. Mississippi case and Louisiana cases were argued before ours. We were the third. So this case took a long time to brief. Part of that is because the intense public interest in this case was going to affect hundreds of thousands, if not millions, of Texans and people around the country whose marriages may or may not be recognized. It was a very important case that was overseen by a lot of people. We treated it very seriously. It was the constitutional rights of various parties and we thought it was important to give it an amount of time. And that argument and evidence had found that that time was, in fact, reasonably expended. Thank you. Thank you very much. Okay. Mr. Murphy, back to you. The district court did not do the best job it could, as my friend in opposition argued. Its analysis pales in comparison to what it did in the Davis v. Perry case, which I commend to you for review and comparison. In that case, the district court below engaged in a careful and express consideration of the billing entries as well as the objections. It struck time for clerical fees. It struck time for block billed hours. It didn't allow Pro Hoc Vitae expenses. And on that point, Judge Higginson, I just wanted to also follow up on your question. ROA 3329. That's the record support behind? Yes. Well, that's the exhibit that details the expenses for Pro Hoc Vitae. It's not the actual receipt, but it's the record exhibit. What's the worst job a district judge has done that we've affirmed? I mean, that's the best job. What's the worst job? That a district judge has done that this firm has affirmed? Honestly, I couldn't say, Your Honor. I mean, that's not the standard, is it? You find the case where the district judge has done the most detailed analysis, that's not the standard, is it? The standard here is as expressed both in the Purdue case and as this court has expressed in the Alberti case, the Louisiana Power case, the Leroy case, that district courts have to provide clear explanation for what they're doing. Plaintiffs bear the burden of establishing that all of their hours are reasonably expended. Can that district court explanation be in the hearing, or does it have to be in its order? I suppose it could be in a hearing, but we didn't have a hearing here, so there's no record of the court's reasoning in this case. And to the point that my friend... I'm sorry? Did you ask for a hearing? We didn't ask for a hearing. Why didn't you ask for a hearing? Hundreds and hundreds of thousands of dollars that you're protesting, and you didn't ask for a hearing? I guess we didn't think it was necessary, and I don't think that's common practice in the Western District. It may be common in other areas, but I don't think it's common practice in the Western District of Texas. And to the point that my friend in opposition made about the number of objections that the state lodged with respect to their billing, the number of objections, and large number of objections, does not excuse the district court of addressing those objections. And if anything, it should alert the district court to some problems in the billing, which the court ignored in this case. It also should alert the court that perhaps the plaintiffs in this case have not provided adequately detailed billing records that the court dismissed in approximately one sentence. What do you say to counsel's statement that they reduced their hours by approximately a third? Well, that's a good start, but it's not enough. I mean, the point is they have to prove that all of the hours they expended that they want the state of Texas taxpayers to pay for, they have to prove that these hours were reasonably expended, and they have to prove that. And to the point about whether this court can reduce fees, the answer is yes. In the Leroy case, the Louisiana Power case, both cases, this court has reduced fees. The Louisiana Power case, this court criticized the district court for not specifically addressing  I'm sorry, the defendants' objections to the plaintiffs' billed hours. Were those both 1988 cases? I believe the Leroy cases, I'm not confident about the Louisiana Power case, but the court has not made any distinction about that. They cited 1988 cases, and the standards are indistinguishable. So the court has not made a distinction with respect to this feature that it's unique to Section 1988. As for the nitpicking point that my friend, Opposition, made, that the state should just accept the fact that there's a few 11 hours of media time slipped in there that the state should pay and not complain about, that's a violation of the clear standards here, which is that they have to establish clearly that all their hours are reasonably expended. I don't think that's what they said. I think they said there are some hours, but that of that block billed, it was mostly crucial integral time. So you can't say the whole amount of that time is media time. I see that my time has expired. Yes, sir. That's what they say. But what they have to prove is that all of those hours were reasonably expended and they didn't do that. Okay. Thank you very much. Thank you, Counsel. We have your argument. And that completes the docket for the afternoon.